**David ZBARAZ, M.D., Martin Motew, M.D., on their own behalf and on behalf of all others similarly situated; Chicago Welfare Rights Organization, an Illinois not-for-profit Corporation, Plaintiffs-Appellants,**

**v.**

**Arthur F. QUERN, Director of the Illinois Department of Public Aid, Defendant-Appellee.**

**No. 77–2290.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1978.

Decided March 15, 1978.

Robert Bennett, Chicago, Ill., Aviva Futorian, Robert E. Lehrer, Wendy Meltzer, James D. Weill, Legal Assistance Foundation of Chicago, Chicago, Ill., David Goldberger, Lois J. Lipton, Roger Baldwin Foundation of ACLU, Chicago, Ill., for plantiffs-appellants.

John D. Gorby, Americans United for Life Legal Defense Fund, Chicago, Ill., amicus curiae.

William J. Scott, Atty. Gen., Chicago, Ill., William A. Wenzel, Sp. Asst. Atty. Gen., Chicago, Ill., for defendant-appellee.

Before SPRECHER, BAUER and WOOD, Circuit Judges.

PER CURIAM.

Appellants brought an action in the District Court for the Northern District of Illinois to enjoin enforcement of Illinois statute P.A. 80–1091, which prohibits public assistance funding of all abortions except those medically necessary for the preservation of the *life* of the pregnant woman. The complaint asserts that P.A. 80–1091 violates Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.*, and the equal protection clause of the Fourteenth Amendment to the degree that it denies funding for abortions which are medically necessary for the preservation of the *health* of the woman seeking treatment, even though her life might not be in danger. The district judge entered an order staying the proceeding based on the abstention doctrine of *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). We reverse and remand to the district court for consideration of appellants' motion for a temporary restraining order and/or preliminary injunction and further proceedings.

## I.

### *Background*

On November 17, 1977 the Illinois state legislature enacted P.A. 80–1091 which prohibits

> the granting of public assistance where the purpose of such aid is to obtain an abortion, induced miscarriage or induced premature birth unless, in the opinion of a physician, such procedures are necessary for the preservation of the life of the woman seeking such treatment, or except an induced premature birth intended to produce a live viable child and such procedure is necessary for the health of the mother or her unborn child.

On December 6, 1977 appellants—two doctors whose medical practices include the provision of abortions to indigent women—filed a complaint in the district court pursuant to 42 U.S.C. § 1983 claiming that the statute deprives them and their patients of their rights under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.*, and the Ninth and Fourteenth Amendments to the United States Constitution. The complaint seeks declaratory and injunctive relief. The statutory claim is based on the argument that although a state has a limited discretion to decide the type and extent of medical assistance to be provided under its Medicaid program, it may not exclude from coverage services which are medically necessary for the patient's health. Appellants thus contend that Title XIX requires the funding of medically necessary abortions even if the woman's life is not in danger. The constitutional claim is predicated on the proposition that Illinois' decision to withdraw funding for abortions necessary for the preservation of the health of the pregnant woman, other than those where her life is in danger, while continuing to fund other types of medical procedures required for "health" rather than "life" reasons, constitutes a violation of the equal protection clause of the Fourteenth Amendment in that the difference in treatment is not based on a sufficient state interest.[1]

Appellants also filed a motion for a temporary restraining order and/or preliminary injunction, in opposition to which appellee Quern—the Director of the Illinois Department of Public Aid—filed a memorandum. Before appellee's answer to the complaint was to have been filed, the district court issued an order continuing appellants' motion pending the institution and completion of appropriate proceedings in the Illinois state courts. In abstaining, the court reasoned that the Illinois statute, if broadly construed, could authorize reimbursement for some or all of the "medically necessary" procedures which plaintiffs contend should be reimbursed and that even a narrow interpretation would serve to "define precisely the constitutional question presented. *Bellotti v. Baird*, 428 U.S. 132 [, 96 S.Ct. 2857, 49 L.Ed.2d 844] (1976)." Appellants

---

1. One of the legal issues disputed by the parties is whether a "rational" state interest or a "compelling" state interest is needed in order to justify the differential treatment.

584

argue that the district court's decision to abstain was in error. This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. *Drexler v. Southwest DuBois School Corp.*, 504 F.2d 836, 838 (7th Cir. 1974) (en banc); *Vickers v. Trainor*, 546 F.2d 739, 741 (7th Cir. 1976).

## II.

### Abstention

■ The *Pullman*-type abstention doctrine invoked by the district court is one of the three exceptions to "the virtual unflagging obligation of the federal courts to exercise the jurisdiction given them" recognized by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). *Pullman*-type abstention is appropriate "where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Bellotti v. Baird*, 428 U.S. at 147, 96 S.Ct. at 2866 (internal quotation marks omitted). *Harrison v. NAACP*, 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). See also *Colorado River Water Conservation District v. United States*, 424 U.S. at 813–14, 96 S.Ct. 1236; *Carey v. Sugar*, 425 U.S. 73, 78–79, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976); *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1971); *Zwickler v. Koota*, 389 U.S. 241, 249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The essence of the doctrine is that the federal courts should avoid entering into "a sensitive area of social policy . . . unless no alternative to its adjudication is open." *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. at 498, 61 S.Ct. at 644. "Needless friction with state policies" may thus be avoided. *Id.* at 500, 61 S.Ct. 643. However, the doctrine is limited by considerations of " '[t]he delay and expense to which application of the abstention doctrine inevitably gives rise.' " *Lake Carri-*

*ers' Assn. v. MacMullan*, 406 U.S. at 509, 92 S.Ct. at 1757, quoting *England v. Medical Examiners*, 375 U.S. 411, 418, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Bellotti v. Baird*, 428 U.S. at 150, 96 S.Ct. 2857. The court should thus consider whether there exist "state court proceedings providing an easy and ample means of clarifying Illinois law." *Vickers v. Trainor*, 546 F.2d at 744.

Although it cannot be disputed that the case at bar would require the court to enter into "a sensitive area of social policy," it is unlikely that a state court construction of P.A. 80–1091 will either moot or materially alter the statutory or constitutional questions raised by appellants. It is also questionable whether there exists an "easy and ample" means of obtaining a state court construction of the statute which would minimize the burden that abstention would place on appellants and the indigent women whose rights they are asserting.

Appellant doctors are asserting the rights of indigent women who might require an abortion for the preservation of their health, even if their lives are not in danger. The size of the class of women involved depends on how the terms "medically necessary for the preservation of the woman's health" and "necessary for the preservation of the woman's life" are interpreted. The Illinois statute's "preservation of life" standard is ambiguous, in the sense that it is uncertain exactly what set of medical diagnoses or prognoses is within its intended ambit. There is a similar ambiguity in the "medically necessary for the preservation of health" standard. However, it is clear that the constitutional and statutory claims raised by appellants will not be obviated in their entirety by a state court interpretation of the "preservation of life" standard unless it is found to be at least coextensive with the "preservation of health" standard. The likelihood of such a construction does not appear sufficiently great to justify abstention.

On the "plain meaning" semantic level there is clearly a distinction between a medical condition which threatens to impair a woman's health and one which threatens

her life. Although ill health may be strongly correlated with a shortening of the sufferer's expected life span, in normal linguistic usage the phrase "necessary for the preservation of life" implies a more immediate and more serious threat of death than the phrase "necessary for the preservation of health." This quotidian differentiation has been implicitly recognized in a number of statutes dealing with abortion, including P.A. 80–1091 itself. Although the Illinois statute makes an exception from the ban on the funding of abortions only for abortions "necessary for the preservation of the life of the woman," with respect to induced premature births intended to produce a live viable child, it permits reimbursement of all procedures "necessary for the health of the mother or her unborn child." The distinc-

tion can also be found in the successive funding amendments to the annual Departments of Labor and Health, Education and Welfare Appropriations Acts,[2] as well as in a number of now defunct criminal abortion statutes,[3] and state Medicaid provisions dealing with the funding of abortions.[4]

Appellee Quern's argument that the ambiguity of the "preservation of life" standard of P.A. 80–1091 is broad enough to encompass the "preservation of health" standard rests primarily on his view of the legislative history of the statute. It is true that there are statements in the legislative debates to the purport that the statute only prohibits funding of "voluntary," "nontherapeutic," "medically unnecessary" abortions.[5] However, on our reading of the

---

**2.** Compare the fiscal 1977 "Hyde Amendment," Pub.L. 94–439, § 209 [90 Stat. 1418]:

None of the funds contained in this Act shall be used to perform abortions *except when the life of the mother would be endangered* if the fetus were carried to term (emphasis added)

with the comparable section of the fiscal 1978 bill, Pub.L. 95–205, § 101:

Provided, that none of the funds provided for in this paragraph shall be used to perform abortions *except where the life of the mother would be endangered* if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest have been reported promptly to a law enforcement agency or public health service, *or except in those instances where severe and long-lasting physical health damage to the mother would result* if the pregnancy were carried to term when so determined by two physicians (emphasis added). [91 Stat. 1460]

**3.** See e. g., The Uniform Abortion Act reproduced in *Roe v. Wade*, 410 U.S. 113, 146, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

**4.** See, e. g., the Pennsylvania statute reproduced in *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 2369 n. 3, 53 L.Ed.2d 464 (1977).

**5.** More completely, appellee cites the following portions of the legislative history:

A. *Third Reading, Illinois House of HB 333*
REPRESENTATIVE LEINENWEBER
The issue is, 'as a matter of public policy of the State of Illinois . . . to pay for abortions that are not medically necessary.'
    \*    \*    \*    \*    \*    \*
House Bill 333 seeks to set public policy by drawing a line on payments for nonmedically necessary surgery.

  \*    \*    \*    \*    \*    \*

House Bill 333 seeks to set public policy that the state ought not to pay for nontherapeutic medically unnecessary abortions. There are millions of Illinois taxpayers who believe deeply that nontherapeutic abortions are morally objectionable. Those feelings are to be recognized in the public policy of this State.

REPRESENTATIVE HUDSON
The Bill seeks to cover the cost of only medically necessary procedures and not elective abortions.

B. *Third Reading, Illinois Senate of HB 333*
SENATOR WASHINGTON
Senator Lemke, would not your bill prevent medical purveyors or doctors from giving adequate treatment to a victim of a rape case or to an incestuous relationship?

SENATOR LEMKE
This bill is in conformity with the Supreme Court rule. It does not abolish therapeutic abortions. If it's up to the physician to decide if it's . . . if this will jeopardize the . . . the woman's life physically or mentally and . . . this will not in any way affect that.

SENATOR WASHINGTON
Then you interpret mental jeopardy the status, mental status of . . . mental attitude of a raped woman or one who has been the victim of an incest, you interpret that language to cover this?

SENATOR LEMKE
Yes.

SENATOR LEMKE
If the . . . if the medical personnel at that hospital, or any hospital, determines that this is a . . . that she is in need of

legislative history there is at best an ambiguous silence as to whether the legislators meant that "therapeutic," "medically necessary" abortions might include those necessary for the preservation of the woman's health as well as those necessary for the preservation of her life. This ambiguous legislative history is not apt to convince the Illinois courts to abandon the common sense conclusion that the two standards are different. We therefore conclude that it is unlikely that a state court construction of P.A. 80–1091 would moot in their entirety the statutory and constitutional claims raised by the appellants.

However, the possibility of a complete mooting of the constitutional question is not a necessary prerequisite to an application of the *Pullman* doctrine. Abstention may also be properly invoked if resolution of the unclear question of state law might cause the constitutional problem to be "presented in a different posture," *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), making it possible "to define precisely the constitutional question presented," *Bellotti v. Baird*, 428 U.S. at 148, 96 S.Ct. at 2866, or to "materially change the nature of the problem," *Harrison v. NAACP*, 360 U.S. at 177, 79 S.Ct. at 1030. Nevertheless, we do not believe that there is a sufficient likelihood that a state court construction of P.A. 80–1091 would materially alter the basic statutory and constitutional questions raised by appellants so as to justify abstention. Concededly, a broad interpretation of the "preservation of life" standard, even one falling short of equating "life" with "health," could substantially reduce the number of women aggrieved by the statute

and whose rights appellants could assert. But this would not change the basic constitutional questions raised by appellants. The appellants contend that in the circumstances of this case there is a limit beyond which the state is not free to withhold funding of abortions. The location of that boundary is determined by the concept of "medically necessary for the preservation of the patient's health" as given content by the provisions of Title XIX and by the range of other medical procedures which Illinois has chosen to fund. The federal courts can determine whether that line exists and, if so, where it is to be drawn, without resolving the uncertainty concerning P.A. 80–1091's "preservation of life" standard. Conversely, a clarifying construction of the Illinois statute which does not completely moot the federal statutory and constitutional questions will merely determine which medical conditions fall outside the permissible boundary once the existence and location of the line is known, but without materially aiding the court in answering the latter questions. Thus, the present case differs from cases such as *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), where a resolution of an ambiguity of the state statute would have changed the dimensions of the constitutional question presented. There the constitutionality of the abortion consent provisions depended on how burdensome they would be to the pregnant adolescent's exercise of her right of privacy and the statute was susceptible to two interpretations materially different in their degree of burdensomeness.

a therapeutic abortion, which is a medical determination and is not my determination, she can have it. This will not in . . . in any way reflect on her. Therapeutic abortion can be for physical or mental reasons and I . . . I think that this bill in no way will affect that.

SENATOR LEMKE
* * * This bill does no way affect therapeutic abortions. It . . . it affects voluntary abortions, this is what it affects. C. *Veto Override Session, November 11, 1977, Illinois House*

REPRESENTATIVE LEINENWEBER
* * * Now, what reasons should guide this state in determining the public policy? First and foremost, I would suggest to you that millions of people in this state and elsewhere strongly feel that nontherapeutic, nonmedically necessary abortions are immoral and wrong.
* * * * * *
Again, are we being fair to the poor? Well, for . . . first of all, there's no equal protection problem because the state would not provide anybody with a free abortion unless its medically necessary.

In addition to questioning whether abstention offers any significant benefits in the present case, appellants argue that abstention will impose substantial burdens on themselves and their patients and that there is no "easy and ample" procedure for seeking a judicial clarification of the Illinois statute which would minimize those burdens. In addition to the increased expense of protracted litigation, the indirect costs of delay are of particular importance in this case. Although in the first instance enforcement of P.A. 80–1091 according to its plain meaning will only adversely affect the monetary interests of appellants and other similarly situated doctors, there is also a likelihood of a chilling effect on the ability of indigent women who need abortions for "health" rather than "life" reasons, but who are unable to pay for them, to procure the needed services. As a consequence, there may be irreversible damage to their health. The importance of this consideration is not entirely abated by the possibility that the state courts might issue a preliminary injunction pending a decision on the statutory construction issues which appellants would raise.

There is also some doubt as to whether Illinois law provides these appellants with an "easy and ample" means of obtaining the necessary clarification of P.A. 80–1091. There is no Illinois procedure for certifying questions of state law to the state judiciary such as that present in *Bellotti v. Baird*, 428 U.S. at 150–51, 96 S.Ct. 2857. Appellants also point to uncertainties under Illinois law as to whether the Medicaid coverage provisions can be challenged in an action seeking "declaratory, injunctive, or class relief," [6] and whether they, as doctors, would have standing to assert the rights of their patients.[7] Appellees take the opposite position.[8] At a minimum the area is not one of settled Illinois law. These questions would not arise if appellants were to perform abortions of the type in question and seek state court review of any resulting denial of reimbursement. However, such a case by case approach would most likely engender long delays before the statutory standard could be sufficiently clarified. In short, the burden that abstention would place on appellants and their patients is too great to be justified by the minimal benefits that abstention would likely produce in terms of avoiding or materially altering the difficult constitutional questions raised in this case. We therefore conclude that the district judge's decision was in error.[9]

## III.

### Other Issues

In addition to seeking reversal of the district court's abstention decision, ap-

**6.** Appellants point to *Vickers v. Trainor,* 546 F.2d 739, 744 (7th Cir. 1976); *Chicago Welfare Rights Organization v. Weaver,* 56 Ill.2d 33, 305 N.E.2d 140 (1973), *app. dismissed, cert. denied,* 417 U.S. 962, 94 S.Ct. 3164, 41 L.Ed.2d 1135 (1974); *People ex rel. Naughton v. Swank,* 58 Ill.2d 95, 317 N.E.2d 499 (1974); and *Ballew v. Edelman,* 34 Ill.App.3d 490, 340 N.E.2d 155 (1st Dist. 1975).

**7.** Appellants cite *In re Estate of Karas,* 61 Ill.2d 40, 329 N.E.2d 234 (1975) (no right to assert constitutional rights of another in intestacy proceeding); *People v. Houston,* 43 Ill.App.3d 677, 357 N.E.2d 184 (1st Dist. 1976), *accord: People v. Sherrod,* 50 Ill.App.3d 532, 8 Ill.Dec. 607, 365 N.E.2d 993 (1st Dist. 1977); *Dept. of Revenue v. Continental Illinois Bank & Trust Co.,* 27 Ill.App.3d 326, 326 N.E.2d 453 (1st Dist. 1975).

**8.** Appellees cite *Bio-medical Laboratories, Inc. v. Quern,* 68 Ill.2d 540, 370 N.E.2d 223 (1977), in rebuttal of the appellants' position on stand-

ing and suggest ways of distinguishing the cases cited by appellant on the second point.

**9.** Appellants also assert that since their claim for relief is grounded on a federal statute as well as the United States Constitution, abstention would for that reason be improper. Although the Title XIX claim as well as the constitutional questions raised involves "a sensitive area of social policy," we believe that its existence reinforces our conclusion that abstention was inappropriate. See *Almenares v. Wyman,* 453 F.2d 1075, 1086 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972). However, since our conclusion as to the inappropriateness of abstention in this case was determined by other factors, we need not reach the question of whether the presence of the federal statutory claim *per se* makes *Pullman*-type abstention inappropriate.

pellants invite this court to proceed to resolve the merits of appellants' motion for a preliminary injunction. We respectfully decline. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Here we must reject appellants' argument that the district court denied appellants' motion for a preliminary injunction. The opinion of that court made it clear that that motion was "entered and continued pending institution and completion of appropriate proceedings in the Illinois state courts." In *Singleton* the Supreme Court found error in the Eighth Circuit's decision to reach the merits of the plaintiff's complaint after the district court had dismissed the cause for lack of standing. Although in the case at bar, we are asked to reach the substance of appellants' motion for a preliminary injunction rather than their complaint, we do not believe that it is necessary or appropriate to bypass the district court. The motion for a preliminary injunction raises the question of appellants' likelihood of prevailing on the merits. Although it is true that appellant's claims primarily pose problems of statutory construction and a judicial weighing of the substantiality and permissibility of state interests, these issues can best be resolved in the context of a record developed in a hearing in the district court. This court, if necessary, can then properly perform its function of reviewing the exercise of the equitable discretion of the district judge. It cannot be denied that this separation of judicial functions may at times lead to added delay and expense, but any question of irreparable injury to the appellants or their patients can be presented to the district court in the form of a motion for a temporary restraining order. We intimate no view, however, on the merits of the relief appellants seek.

At oral argument appellee Quern raised the question of appellants' standing to assert the rights of their patients. We believe that this issue too should first be dealt with at the district court level. The question has not been fully briefed here. Our references in this opinion to the doctors' assertion of the rights of their patients are not to be construed as an implicit resolution of the question of whether they are legally entitled to do so.

The decision of the district court is reversed and the case is remanded with instructions that the plaintiff-appellants' motion for a temporary restraining order and/or preliminary injunction is to be expeditiously taken under consideration. The injunction pending appeal issued by this court on January 11, 1978 is dissolved.