584 F.2d 1362
 Janet DOE, Appellant,
v.
James B. KENLEY, M.D., Commissioner, State Board of Health,
Individually and in his official capacity, Kenneth M.
Haggerty, D.D.S., President, State Board of Health,
Individually and in his official capacity, Fletcher J.
Wright, Jr., M.D., Individually and in his official
capacity, John H. Vanhoy, O.D., Individually and in his
official capacity, William R. Hill, M.D., Individually and
in his official capacity, A. Gibson Howell, Individually and
in his official capacity, J. Curtis Nottingham, Individually
and in his official capacity, Clarence W. Taylor, Jr., M.D.,
Individually and in his official capacity, Brig. Gen. James
M. Morgan, Jr., Individually and in his official capacity,
Fostine G. Riddick, RN, MA, Individually and in her official
capacity, Virginia State Board of Health, John N. Dalton,
Governor of Virginia, official and Individual capacity,
Vincent Pross, Acting Comptroller, official capacity, Appellees,
American Civil Liberties Union and The Virginia Civil
Liberties Union, Amici Curiae.
 No. 78-1330.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 20, 1978.
Decided Oct. 19, 1978.
 
 Lynn I. Miller, Washington, D. C. (Roy Lucas, Washington, D. C., on brief), for appellant.
 Robert T. Adams, Asst. Atty. Gen., Richmond, Va., on brief, for appellees.
 Judith Levin, Sylvania Law, Janet Benshoof, New York City, American Civil Liberties Union Foundation and The Virginia Civil Liberties Union on brief, as amici curiae.
 Before WINTER, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.
 K. K. HALL, Circuit Judge:
 
 
 1
 The issue we decide in this appeal is a limited one: whether a state which has established a policy for the stated objective of eliminating state medical assistance (medicaid) funding for nontherapeutic abortions may implement that policy by using a policy standard which requires a physician to certify that "on the basis of (his) professional judgment the life of (the medicaid recipient) would be endangered if the fetus were carried to term." We hold that it cannot and remand to the district court for entry of an order enjoining use of such a policy and physician's certification standard and directing modification of that standard to make it conform to its stated policy objective until such time as the state may elect to officially change its medicaid funding policy.
 
 
 2
 "Janet Doe," a pregnant Virginia medicaid recipient, brought a civil class action against various officials of the Commonwealth of Virginia to enjoin implementation of a policy of the Virginia State Board of Health by use of a standard which would tend to discourage physicians from performing abortions for medicaid recipients by eliminating reimbursement for all abortions other than those for which a physician could certify that the recipient's life would be endangered if the fetus were carried to term. She alleged violations of the Social Security Act, Title XIX, 42 U.S.C.A. § 1396 Et seq. ("Title XIX") and the equal protection and due process clauses of the Fourteenth Amendment. A temporary restraining order was issued pending determination of the merits of her claim.
 
 
 3
 The policy in question is an amendment to the "State Plan for Medical Assistance" which was finally approved by the State Board of Health on November 30, 1977. The minutes of that meeting show that the amendment was "to limit the payment for abortions to only those instances in which the mother's life was in danger." The minutes of that meeting and a previous meeting held September 9, 1977, show that the amendment was made following public response to hearings held to discuss medicaid funding of abortions after Congress enacted a similar limitation on the use of federal funds for abortions.[1] The amendment was approved against the recommendation of both the Governor's Advisory Committee on Medicare and Medicaid and the staff of the Department of Health.
 
 
 4
 On March 20, 1978, a "Medicaid Memo" was issued to physicians and hospitals participating in the medicaid program setting forth the standard for reimbursement and the physician's certification requirement which Doe finds objectionable.[2] Subsequent to filing of her class action and entry of the temporary restraining order, the State Board of Health passed a resolution explaining its new funding policy. The resolution referred to unspecified Supreme Court rulings which recognized that states have some discretion in funding abortions through their medicaid programs and it stated that the policy amendment was made "because (the Board) desired and continued to desire to eliminate reimbursement for abortions for which there were no good medical reasons." The resolution also stated that, while the new funding policy "permits the physician to consider (a woman's health), as well as other factors affecting medical necessity," the Board was opposed to use of any subterfuge in a physician's certification that a patient needed an abortion, "particularly for insubstantial mental health, or familial, or social reasons in cases in which there is no immediate threat to the mother's life.[3]
 
 
 5
 A hearing on the merits of Doe's claim was held on May 16, 1978, at which the President of State Board of Health and the State Health Commissioner testified as to the purpose of the policy amendment and the interpretation which would be placed on it by the Commonwealth's program administrators. Based upon the evidence presented and the arguments of counsel, the district court found that the purpose of the policy was to eliminate state funding of nontherapeutic abortions, that such a policy was permitted under Title XIX, Beal v. Doe, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977) and under the Constitution, Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), and that the policy directive contained in the resolution was clear. Thereupon, the temporary restraining order was vacated and Doe's class action was dismissed.
 
 
 6
 Immediately following entry of the court's order, the Commonwealth issued another "Medicaid Memo" which adopted the court's findings of fact that the new funding policy permits the physician to consider the recipient's "physical and mental health, as well as other factors affecting medical necessity." It concluded by restating the previous requirement that a physician certify that, based upon his professional judgment, the life of the recipient would be endangered if the fetus were carried to term.[4]
 
 
 7
 Doe appeals the court's decision, claiming that use of a policy standard and a certification requirement which speak in terms of endangerment of "life" rather than "health" belies the Commonwealth's stated intent to eliminate reimbursement only for nontherapeutic abortions when its practical effect is to eliminate many medically necessary abortions from medical coverage. She asserts that Title XIX requires funding of all abortions which are determined by physicians to be medically necessary based upon their professional consideration of all medical factors, including the mental health of the recipient and the possibility of a recipient bearing a deformed child, as in the case of her exposure to German measles. She asserts that abortions following rape and incest should be included in medicaid coverage for eligible recipients. Also, she alleges that failure to fund medically necessary abortions for low income persons effectively denies them access to abortions in violation of their constitutional rights of privacy and equal protection and due process of law.
 
 
 8
 The Commonwealth agrees with the district court's finding that its objective is to eliminate funding only for nontherapeutic abortions. Its counsel argues that this limited objective brings the Virginia program in line with the holdings of Beal v. Doe, supra, and Maher v. Roe, supra, and that based upon the facts before us and the rulings of those cases, we should not reach the issues of statutory and constitutional construction urged upon us by Doe. It is also argued that the phrases "endanger the Life of the recipient" and "endanger the Health of the recipient" convey essentially the same meaning except that the former imports a more substantial degree of medical need, and that use of the policy standard of endangerment of the life of the recipient facilitates the important state interest of monitoring funding for this special medical procedure by assuring that in no instance will the Commonwealth fund an abortion for which no substantial medical reason exists. Finally, counsel for the Commonwealth argues that if we find its policy standard to be ambiguous in light of the policy-makers' intent and the interpretation placed on it by program administrators, we should invoke the doctrine of abstention in order to permit the state courts to construe the standard in the first instance.
 
 
 9
 We think that on the facts of this case we need not reach the statutory and constitutional issues raised by Doe of whether a state may be compelled by either Title XIX or the Constitution to fund induced therapeutic abortions. Also, since the dispute before us is a limited one, we decline to invoke the doctrine of abstention. This issue may be settled simply and without further delay. See Zbaraz v. Quern, 572 F.2d 582 (7th Cir. 1978). Thus, we hold that the district court erred in dismissing Doe's class action because the policy standard set out in the amendment and the physician's certification requirement is ambiguous in light of the Commonwealth's stated objective to eliminate only funding of nontherapeutic abortions.
 
 
 10
 The Commonwealth's position throughout has been that the words "endangerment of life" really mean "endangerment of health," or more properly "substantial endangerment of health." We disagree. In usual parlance, conditions involving "endangerment of life" are those which pose a serious threat of death. Zbaraz v. Quern, 572 F.2d at 585. But such a narrow meaning is contrary to the one intended by the Commonwealth and makes the standard of endangerment of life ambiguous in violation of Title XIX, 1396a(a)(17). When the meaning of a standard can be made clear, we think it should be made clear and, therefore, find it necessary to reverse and remand this class action for entry of an appropriate order by the district court. Since the stated objective of the policy amendment to the State Plan for Medical Assistance is to eliminate reimbursement only for nontherapeutic abortions, as defined in Beal v. Doe, supra, and Maher v. Roe, supra, the order shall include provisions (i) directing substitution of the words "substantial endangerment of health" for the words "endangerment of life" in the amendment and the physician's certification requirement, (ii) directing immediate issuance of a public notice for the benefit of recipients and a written communication to physicians and hospitals participating in the Commonwealth's medicaid program which clearly set forth the standard for reimbursement to be one based upon a physician's professional medical judgment that the health of the recipient would be substantially endangered if the fetus were carried to term and that such judgment shall "be exercised in light of all factors physical, emotional, psychological, familial, and the woman's age relevant to the well-being of the patient," Beal v. Doe, 432 U.S. at 442, n. 3, 97 S.Ct. at 2369, citing Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and (iii) expressly authorizing administrative flexibility in the establishment of various physician's certification forms and requirements to conform to any federal requirements imposed from time to time for federal funding of abortions for which the Commonwealth may choose to seek available federal funds.[5]
 
 The decision of the district court is
 
 11
 REVERSED AND REMANDED.
 
 
 
 [1]
 In 1976, Congress passed an appropriations measure for fiscal year 1977 limiting use of federal funding for abortions; it reads,
 None of the funds contained in this Act shall be used to perform abortions Except where the life of the mother would be endangered if the fetus were carried to term. (emphasis added)
 Pub.L. 94-439, § 209, 90 Stat. 1434.
 In 1977, Congress passed a comparable measure applicable to federal funding of abortions for fiscal year 1978; it reads, in pertinent part,
 Provided, That none of the funds provided for in this paragraph shall be used to perform abortions Except where the life of the mother would be endangered if the fetus were carried to term ; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest has been reported promptly to a law enforcement agency or public health service; Or except in those instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians. (emphasis added)
 Pub.L. 95-205, § 101, H.J.Res. 662, 91 Stat. 1460.
 
 
 [2]
 This Medicaid Memo reads, in pertinent part, as follows:
 Subject: Elective Abortions
 In accordance with Section 32-30.1 of the Code of Virginia of 1950, as amended, the State Health Commissioner, upon the recommendation of the State Board of Health, and with the concurrence of the Governor, is amending the State Plan for Medical Assistance (Medicaid) to provide for the payment for elective abortions only when the physician has found and certified that on the basis of his/her professional judgment, the life of the mother would be endangered if the fetus were carried to term. This action is effective as of April 1, 1978.
 The following exact statement must accompany each claim for an elective abortion:
 "I, Dr. , certify that on the basis of my professional judgment, the life of (name) of (address) would be endangered if the fetus were carried to term. This judgment is based on the following diagnosis and/or condition: ."
 Signed
 
 
 [3]
 Approved April 26, 1978, this resolution reads, in pertinent part, as follows:
 "WHEREAS, the United States Supreme Court ruled in 1977 that the States do have some ability to determine whether or not they will reimburse for abortions; and
 WHEREAS, in response to the 1977 United States Supreme Court cases this Board and the Governor of the Commonwealth of Virginia promulgated a new state regulation concerning Medicaid abortions which limited reimbursement to those cases in which the life of the mother would be endangered; and
 WHEREAS, the Board of Health changed its Medicaid rule because it desired and continues to desire to eliminate reimbursement for abortions for which there were no good medical reasons; and
 WHEREAS, providers and recipients are apparently confused as to the intent of the regulation.
 BE IT, THEREFORE, RESOLVED, that the Board of Health directs the Commissioner of Health to inform all physician providers that, while its regulation concerning Medicaid abortions permits the physician to consider her health, as well as other factors affecting medical necessity when forming his medical judgment that the life of the mother may be endangered, it is adamantly opposed to any physician provider resorting to subterfuge in his certification that his patient requires an abortion, particularly for insubstantial mental health, or familial, or social reasons in cases in which there is no immediate threat to the mother's life.
 
 
 [4]
 On appeal, counsel for Doe and the Commonwealth move this court for leave to supplement the record in several respects and, in light of our limited holding, we find it necessary to grant only that part of Doe's motion which would add to the record this "Medicaid Memo" which was issued after dismissal of her class action. This second "Medicaid Memo" is dated June 19, 1978, and reads in pertinent part, as follows:
 SUBJECT: Abortions Covered by Medicaid
 The purpose of this amendment is to eliminate reimbursement for abortions for which There are no good medical reasons. It does not limit reimbursement only to those cases in which there is an immediate threat to the life of the mother. "Endanger" means to expose to harm or danger; imperil. The State Board of Health intends this language To receive a broader construction than one limited to an immediate threat to the life of the mother. The amendment permits the physician to consider the woman's physical and mental health, as well as other factors affecting medical necessity, when forming his/her professional judgment that the life of the woman would be endangered. The physician is not to rely upon insubstantial mental health or family or social reasons when reaching his/her judgment.
 Either medical diagnoses or the presence of medical risk factors, including age, could justify an induced abortion for medical reasons under this rule. The Medical Assistance Program does not intend to second guess each physician on his/her professional judgment so long as the diagnoses therefor are reasonable. However, the Board of Health is opposed to the use of subterfuge in the physician's certification. If such is suspected, the Medical Assistance Program will investigate and, when indicated, take appropriate action.
 The following exact statement must accompany each claim for an elective (induced) abortion:
 "I, Dr. , certify that on the basis of my professional judgment, the life of (name) of (address) would be endangered if the fetus were carried to term. This judgment is based on the following diagnoses and/or conditions: ." Signed
 (emphasis added)
 
 
 [5]
 We note that Congressional appropriations measures approved for the fiscal years 1977 and 1978 have limited the availability of federal funding for abortions. See n. 1, Supra