594 F.Supp. 147 (1984)
STATE OF ILLINOIS, by the ILLINOIS DEPARTMENT OF PUBLIC AID, Plaintiff,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and Margaret M. Heckler, Secretary of Health and Human Services, Defendants.
No. 82 C 4170.
United States District Court, N.D. Illinois, E.D.
July 7, 1984.
*148 *149 Neil F. Hartigan, Atty. Gen., Barbara L. Greenspan, Sp. Asst. Atty. Gen., Chicago, Ill., for plaintiff.
J. Paul McGrath, Asst. Atty. Gen., Lewis K. Wise, Robert S. Lavet, Civil Div., Dept. of Justice, Susanne M. Lee, Dept. of Health and Human Services, Washington, D.C., Dan K. Webb, U.S. Atty., William Clabault, Asst. U.S. Atty., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER
PLUNKETT, District Judge.
The State of Illinois, by the Illinois Department of Public Aid ("Plaintiff"), brings this action against the United States Department of Health and Human Services and Margaret M. Heckler,[1] as Secretary of Health and Human Services (collectively "Defendants"), seeking reversal of Defendants' decision disallowing $965,399.00 in "federal financial participation" claimed by Plaintiff under the Medicaid program ("Medicaid"), Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. ("Title XIX"), for the costs of certain abortion services. Jurisdiction is based on 28 U.S.C. § 1331 and is not contested. Presently before the court are the parties' cross-motions for summary judgment. For the reasons set forth below, Defendants' motion is granted, and Plaintiff's motion is denied.

Background
Medicaid, the purpose of which is to make medical care available to the poor, is, to use the now familiar phrase, a system of "cooperative federalism." See King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968) (applying the term to the Aid to Families With Dependent Children program). Although a state is not required to establish a Medicaid program, if it chooses to do so, and if the program which it develops satisfies the requirements of the applicable federal statutes and regulations, then the state is entitled to federal reimbursement for a certain percentage of its expenditures under its program. See 42 U.S.C. §§ 1396, 1396a, 1396b.
Since September 30, 1976, an important exception to the general availability of federal funds to reimburse the states for Medicaid expenditures has been contained in the so-called "Hyde Amendment." Enacted *150 annually (in somewhat different versions) as an amendment to the applicable appropriations bill, the Hyde Amendment sharply restricts federal funding of abortion services. The original version of the Hyde Amendment stated that "[n]one of the funds contained in this Act [the appropriations bill] shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term." Pub.L. No. 94-439, § 209, 90 Stat. 1434 (1976). The other version of the Hyde Amendment which is relevant to the present case provided that no federal funds:
shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest has been reported promptly to a law enforcement agency or public health service; or except in those instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians.
Pub.L. No. 95-205, § 101, 91 Stat. 1460 (1977); Pub.L. No. 95-480, § 210, 92 Stat. 1586 (1978).[2]
Immediately following the original enactment of the Hyde Amendment, its constitutionality was challenged in an action brought in the United States District Court for the Eastern District of New York, in which the Secretary of Health, Education and Welfare[3] was the defendant. On October 22, 1976, the Honorable John F. Dooling entered a preliminary injunction forbidding the Secretary from enforcing the Hyde Amendment and requiring him to continue to provide federal reimbursement for abortion services under the standards which were applicable before the Hyde Amendment was enacted. McRae v. Mathews, 421 F.Supp. 533 (E.D.N.Y.1976). The injunction applied throughout the nation. 421 F.Supp. at 543. On appeal, however, the Supreme Court vacated the injunction on June 29, 1977 and remanded the case for further consideration in light of two cases which the Supreme Court had decided after Judge Dooling had issued his order. Califano v. McRae, 433 U.S. 916, 97 S.Ct. 2993, 53 L.Ed.2d 1103 (1977).
On remand, Judge Dooling entered a temporary restraining order, substantially similar to his earlier preliminary injunction, on July 28, 1977, and he vacated that order on August 4, until September 1978. On January 15, 1980, Judge Dooling issued a voluminous opinion and entered judgment in favor of the plaintiffs. McRae v. Califano, 491 F.Supp. 630 (E.D.N.Y.1980). Judge Dooling first concluded that the Hyde Amendment had substantively amended Title XIX, thus "relieving the states of the duty to include in their plans provision ... for medically necessary abortions." 491 F.Supp. at 732-733. Judge Dooling went on to hold, however, that the Hyde Amendment was unconstitutional. 491 F.Supp. at 742. Accordingly, Judge Dooling ordered the Secretary to provide federal funds to the states for Medicaid expenditures for medically necessary abortions.
A little more than five months later, though, the Supreme Court reversed Judge Dooling's decision. Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). Although the Court declined to decide whether the Hyde Amendment had substantively amended Title XIX, 448 U.S. at 310 n. 14, 100 S.Ct. at 2684 n. 14, it first concluded "that Title XIX does not require a participating State to pay for those medically necessary abortions for which federal reimbursement is unavailable under the Hyde Amendment." 448 U.S. at 311, 100 S.Ct. at 2685 (footnote omitted). The Court then held "that the funding restrictions of the Hyde Amendment violate neither the Fifth Amendment nor the Establishment *151 Clause of the First Amendment," and "that the appellees lack standing to raise a challenge to the Hyde Amendment under the Free Exercise Clause of the First Amendment." 448 U.S. at 326-327, 100 S.Ct. at 2693.
While these developments in the McRae litigation were taking place, related events were occurring in Illinois. Those events were touched off by the Illinois legislature's enactment, on November 17, 1977, of P.A. 80-1091, amending Ill.Rev.Stat. ch. 23, §§ 5-5, 6-1, 7-1 (1977), which prohibits the use of state funds to pay for abortion services except where such services "are necessary for the preservation of the life of the [pregnant] woman." On December 6, 1977, a lawsuit was brought in this court in which the plaintiffs alleged that P.A. 80-1091 violated their rights under both Title XIX and the Ninth and Fourteenth Amendments to the Constitution. The only defendant named in the complaint was the Director of the Illinois Department of Public Aid. Fifteen days later, the Honorable Alfred Y. Kirkland, to whom the case was originally assigned, stayed the proceedings pending an interpretation of P.A. 80-1091 by an Illinois court. Zbaraz v. Quern, No. 77 C 4522 (N.D.Ill. Dec. 21, 1977). The plaintiffs appealed, and, on January 11, 1978, the Court of Appeals for the Seventh Circuit issued an injunction prohibiting the defendant from enforcing P.A. 80-1091 pending its resolution of the appeal. Zbaraz v. Quern, No. 77-2290 (7th Cir. Jan. 11, 1978). On March 15, 1978, the Seventh Circuit reversed Judge Kirkland's decision staying the lawsuit and remanded the case to him for further proceedings; the court also dissolved the injunction which it had issued on January 11. Zbaraz v. Quern, 572 F.2d 582 (7th Cir.1978).
On remand, Judge Kirkland granted the plaintiffs' motion for summary judgment on May 15, 1978, holding that the Hyde Amendment had not substantively amended Title XIX, and thus that Illinois remained obligated under Title XIX to fund medically necessary abortions. Accordingly, Judge Kirkland permanently enjoined the defendants[4] from enforcing P.A. 80-1091 so as to deny payments for medically necessary abortions. Zbaraz v. Quern, No. 77 C 4522 (N.D.Ill. May 15, 1978). On February 13, 1979, however, the Seventh Circuit vacated Judge Kirkland's decision. Zbaraz v. Quern, 596 F.2d 196 (7th Cir. 1979), cert. denied, 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). The court ruled that Judge Kirkland had erred in finding that the Hyde Amendment had not substantively amended Title XIX, and thus concluded that "Illinois is not required by Title XIX to fund abortions other than those covered by the Hyde Amendment." 596 F.2d at 201-202. In light of this holding, the Seventh Circuit directed that the district court, on remand, rule on the constitutionality of both P.A. 80-1091 and the Hyde Amendment. 596 F.2d at 202-203.
On February 15, 1979, pursuant to the Seventh Circuit's mandate, Judge Kirkland modified his injunction to require Illinois to fund only those abortion services for which federal reimbursement was available under the Hyde Amendment. The Attorney General of the United States was notified that the constitutionality of an Act of Congress had been drawn into question, and, on March 8, 1979, the United States intervened, pursuant to 28 U.S.C. § 2403(a), to defend the constitutionality of the Hyde Amendment. About a month later, the case was reassigned to the Honorable John F. Grady.
On April 27, 1979, Judge Grady granted the plaintiffs' motion for summary judgment to the extent that he found that P.A. 80-1091 and the Hyde Amendment, "as applied to medically necessary abortions prior to the point of fetal viability," were violative of, respectively, the Fourteenth Amendment and the Fifth Amendment. Zbaraz v. Quern, 469 F.Supp. 1212, 1221 (N.D.Ill.1979). Accordingly, on April 30, 1979, see 469 F.Supp. at 1221, Judge Grady enjoined the Director of the Illinois Department *152 of Public Aid from enforcing P.A. 80-1091 so as to deny payments for medically necessary abortions before the point of fetal viability. In his opinion, Judge Grady noted that, although he was constrained by the Seventh Circuit's mandate to decide the question of the Hyde Amendment's constitutionality, he was "not persuaded that the federal and state enactments are inseparable and would hesitate to inject into the proceeding the issue of the constitutionality of a law not directly under attack by plaintiffs." 469 F.Supp. at 1215 n. 3. Judge Grady refused to stay his order, and an application in the Supreme Court for a stay pending appeal was denied on May 24, 1979. Williams v. Zbaraz, 442 U.S. 1309, 99 S.Ct. 2095, 60 L.Ed.2d 1033 (1979) (Stevens, J., in chambers). A reapplication for a stay was denied on June 4, 1979. Williams v. Zbaraz, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 282 (1979).
On direct appeal, the Supreme Court vacated Judge Grady's decision on June 30, 1980, the same day that the Court decided Harris v. McRae. Williams v. Zbaraz, 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980). The Court first held, amplifying the reservations expressed by Judge Grady, "that the District Court in fact lacked jurisdiction to consider the constitutionality of the Hyde Amendment, for the court acted in the absence of a case or controversy sufficient to permit an exercise of judicial power under Art. III of the Constitution." 448 U.S. at 367, 100 S.Ct. at 2700. The Court went on to hold, in light of its decision in Harris v. McRae, that Illinois was "not obligated under Title XIX to pay for those medically necessary abortions for which federal reimbursement is unavailable under the Hyde Amendment," and that, just as the Hyde Amendment was not violative of the Fifth Amendment, P.A. 80-1091 was not violative of the Fourteenth Amendment. 448 U.S. at 368-369, 100 S.Ct. at 2700-01. On remand, the district court dismissed the United States from the case and denied Illinois' motion to require federal reimbursement for payments made under court order by Illinois (Plaintiff) for medically necessary abortions, without prejudice, on the ground that the Secretary of Health and Human Services had not at that time determined that federal reimbursement would not be allowed. As a result of the Zbaraz litigation, as discussed above, Plaintiff was under such court orders between January 11, 1978 and March 15, 1978; between May 15, 1978 and February 15, 1979; and between April 30, 1979 and June 30, 1980.
By letters dated July 24, 1980 and August 1, 1980, the Health Care Financing Administration of the Department of Health and Human Services disallowed $965,399.00 in federal financial participation claimed by Plaintiff for the costs of medically necessary abortions which were funded by Plaintiff and which were performed in Illinois between August 5, 1977 and September 30, 1979. That disallowance was upheld by the Departmental Grant Appeals Board of the Department of Health and Human Services on February 26, 1982, on the ground that the federal reimbursement sought by Plaintiff was barred by the Hyde Amendment. The Grant Appeals Board's decision constituted Defendants' final decision in this case. Plaintiff filed its complaint in this court on July 2, 1982, seeking reversal of that decision. This, then, is a case about uncooperative federalism.

Discussion

I. Jurisdiction

Because Defendants' decision in this case involves a disallowance, under 42 U.S.C. § 1316(d), rather than a determination of plan nonconformity, under 42 U.S.C. § 1316(a), this court has jurisdiction to review that decision under 28 U.S.C. § 1331, and our review is governed by § 10 of the Administrative Procedure Act, as amended, 5 U.S.C. §§ 701-706. State of Illinois, Department of Public Aid v. Schweiker, 707 F.2d 273 (7th Cir.1983). See Commonwealth of Pennsylvania v. Department of Health and Human Services, 723 F.2d 1114, 1116 & n. 4 (3d Cir.1983); State of Connecticut, Department of Income *153 Maintenance v. Schweiker, 557 F.Supp. 1077, 1079 (D.Conn.1983).

II. Scope of Review

We agree with the parties that the scope of our review of Defendants' decision is established by 5 U.S.C. § 706. That section provides, in part, that "the reviewing court shall decide all relevant questions of law ... [and] interpret constitutional and statutory provisions." In the present case, Plaintiff only challenges the legal basis of Defendants' decision. Regardless of what more stringent standard of review, if any, should be applied to an agency's decision, the reviewing court must, under § 706(2)(A), "hold unlawful and set aside agency action, findings, and conclusions found to be ... not in accordance with law." See, e.g., State of Minnesota, by Noot v. Heckler, 718 F.2d 852, 860 (8th Cir.1983); St. Francis Hospital Center v. Heckler, 714 F.2d 872, 873 (7th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); Bellwood General Hospital v. Schweiker, 673 F.2d 1043, 1044 (9th Cir.1982).
Moreover, because the legal questions resolved by Defendants in the present case "involve[] not technical details but the ... broad purpose" of Title XIX and of the Hyde Amendment, and other general legal issues, we do not believe that Defendants' legal conclusions are entitled to any deference. State of Connecticut, Department of Income Maintenance v. Schweiker, 557 F.Supp. at 1089-1091. See Western Coal Traffic League v. United States, 694 F.2d 378, 383-384 (5th Cir.1982), modified on other grounds, 719 F.2d 772 (5th Cir.1983) (en banc), cert. denied, ___ U.S. ___, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984); St. John's Hickey Memorial Hospital, Inc. v. Califano, 599 F.2d 803, 812-814 (7th Cir. 1979).

III. The Merits

We agree with the parties that no material factual dispute exists in this case, and thus that summary judgment is appropriate. See Fed.R.Civ.P. Rule 56(c). Indeed, as suggested above, the facts on which Defendants' disallowance decision is predicated have never been in dispute. In particular, Plaintiff concedes that the abortions for the costs of which it seeks federal reimbursement, though medically necessary, do not fall within the ambit of any of the explicit exceptions to the prohibition of federal funding contained in the relevant versions of the Hyde Amendment. On the other hand, Defendants appear to concede that, but for the existence of the Hyde Amendment, Plaintiff would be entitled to federal reimbursement for the costs of those abortions under Title XIX. The only issues which we must decide, therefore, are those of whether Defendants' finding that the Hyde Amendment is applicable to the present case is correct, and, if so, whether Defendants properly interpreted that statutory provision.
We begin by noting that, to the extent that Plaintiff seeks federal reimbursement for the costs of abortions which were performed while Plaintiff was not (either directly or effectively) under court order in the Zbaraz litigation not to enforce P.A. 80-1091, Plaintiff's claim clearly must fail. During the entire period in question, August 5, 1977 to September 30, 1979, no relevant court orders were in effect in the McRae litigation. Given the fact that, during that period, apart from the possible effects of orders issued in the Zbaraz litigation, Defendants were in no way prohibited from enforcing the Hyde Amendment, Plaintiff cannot successfully contend that it is entitled to federal reimbursement for the costs of abortions which it voluntarily funded. As the Supreme Court stated in Harris v. McRae, 448 U.S. at 311 n. 16, 100 S.Ct. at 2685 n. 16, a state "is free, if it so chooses, to include in its Medicaid plan those medically necessary abortions for which federal reimbursement is unavailable [under the Hyde Amendment]." Implicit in this statement is the notion that federal reimbursement does not become available by virtue of the fact that a state chooses to fund such abortions.
*154 We now turn to the more difficult problems presented by Plaintiff's involuntary funding of abortions as a result of the court orders in the Zbaraz litigation. Plaintiff first argues that Defendants should be found to have been bound by those orders to provide federal reimbursement for the costs of those abortions which the orders required Plaintiff to fund. However, the United States (and thus, in effect, Defendants) was not a party to the Zbaraz lawsuit until it intervened in the case on March 8, 1979. After that date, though, as the Supreme Court specifically stated in Williams v. Zbaraz, 448 U.S. at 366, 100 S.Ct. at 2699, "[t]he District Court did not ... enjoin any action by the United States." See also Williams v. Zbaraz, 442 U.S. at 1311, 99 S.Ct. at 2097 (Stevens, J., in chambers) ("The District Court's injunction ... was directed solely to the State of Illinois.").
Nevertheless, Plaintiff contends that Defendants should be found to have been bound by the Zbaraz orders, both before and after the United States became a party to the action, under Fed.R.Civ.P. Rule 65(d). That rule provides, in part, as follows:
Every order granting an injunction and every restraining order ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.
We find that Plaintiff's argument that Defendants were "in active concert or participation with" Plaintiff, within the meaning of Rule 65(d), is entirely without merit. The purpose of the quoted portion of Rule 65(d) is to insure "that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945). In order to bring Defendants within the scope of Rule 65(d), Plaintiff would have to argue that Defendants' not providing federal reimbursement for the costs of the abortions in question somehow allowed Plaintiff to evade the court orders in Zbaraz directing Plaintiff not to enforce P.A. 80-1091; Plaintiff has not made, nor could Plaintiff successfully make, such an argument. See Thompson v. Freeman, 648 F.2d 1144, 1147-1148 (8th Cir.1981); G. & C. Merriam Co. v. Webster Dictionary Co., Inc., 639 F.2d 29, 34-40 (1st Cir.1980).
Moreover, even assuming, arguendo, that Judge Grady's declaration in Zbaraz that the Hyde Amendment was unconstitutional acted as an injunction prohibiting Defendants from enforcing the Hyde Amendment, Defendants were not bound by Judge Grady's decision. The principal qualification of the general rule "that persons subject to an injunctive order ... are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order," GTE Sylvania, Inc. v. Consumers Union of the United States, Inc., 445 U.S. 375, 386-387, 100 S.Ct. 1194, 1201-02, 63 L.Ed.2d 467 (1980), is that the court which issued the order must have had jurisdiction to do so. See Walker v. City of Birmingham, 388 U.S. 307, 313-315 & n. 6, 87 S.Ct. 1824, 1828-29 & n. 6, 18 L.Ed.2d 1210 (1967). In the present case, as discussed above, Judge Grady "lacked [subject matter] jurisdiction to consider the constitutionality of the Hyde Amendment." Williams v. Zbaraz, 448 U.S. at 367, 100 S.Ct. at 2700. Accordingly, rather than simply being erroneous, Judge Grady's decision on that issue was, in legal effect, void ab initio.
Plaintiff's other argument in support of its position that the Hyde Amendment is not applicable to the present case is based on 45 C.F.R. § 205.10(b) (1983), which provides, in part, as follows:
Federal financial participation is available for the following items:
. . . . .
(3) Payments of assistance within the scope of Federally aided public assistance *155 programs made in accordance with a court order.
Since it provided funds for abortions "in accordance with ... court order[s]," Plaintiff contends, § 205.10(b)(3) entitles it to federal reimbursement for the costs of those abortions. We disagree. The obvious flaw in Plaintiff's argument is that a regulation, like § 205.10(b)(3), cannot displace a valid statutory provision, like the Hyde Amendment. To the extent that § 205.10(b)(3) is inconsistent with the specific federal funding restrictions contained in the Hyde Amendment, we cannot give effect to § 205.10(b)(3). See, e.g., General Services Administration v. Benson, 415 F.2d 878, 880 (9th Cir.1969); United States v. Maxwell, 278 F.2d 206, 210-211 (8th Cir. 1960); DeGregorio v. O'Bannon, 500 F.Supp. 541, 546-547 (E.D.Pa.1980).
Having found that Defendants properly determined that the Hyde Amendment is applicable to the present case, we now consider the most interesting question in this case, that of whether Defendants correctly interpreted the Hyde Amendment as barring federal reimbursement for the costs of abortions (which, although medically necessary, do not fall within the ambit of any of the explicit exceptions contained in the Hyde Amendment) which a state is required to fund by a federal court. In other words, we now consider whether, under the circumstances presented by this case, 45 C.F.R. § 205.10(b)(3) (1983) is, in fact, inconsistent with the Hyde Amendment. We begin with the proposition that, for purposes of the present case, the Hyde Amendment, on its face, flatly prohibits the use of federal funds to pay for abortions; the language of the Hyde Amendment is unambiguous. This fact distinguishes the present case from Commonwealth of Pennsylvania v. Department of Health and Human Services, 723 F.2d at 1118-1120, in which the court held that the Hyde Amendment does not bar federal reimbursement for the costs of abortions during a period reasonably needed by a state in order to comply with a federal regulation requiring that notice be given to Medicaid recipients before a reduction in benefits, including a termination of abortion funding, can take effect. In that case, the court's decision was premised on its finding that the Hyde Amendment is ambiguous with respect to the issue of when the funding restrictions contained in the Hyde Amendment were to take effect. 723 F.2d. at 1119.
Our conclusion that the "plain meaning" of the Hyde Amendment is that Defendants are prohibited from providing the federal funds which Plaintiff seeks does not, however, end our inquiry. "[T]he plain meaning doctrine has always been considered subservient to a truly discernible legislative purpose." Aviation Consumer Action Project v. Washburn, 535 F.2d 101, 106 (D.C.Cir.1976). Still, "a statute must be construed according to its ordinary meaning unless it can be said that Congress clearly did not intend it to have such meaning as determined from other parts of the statute or legislative history." Smith v. Pena, 621 F.2d 873, 876 (7th Cir.1980). See Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); Grand Boulevard Improvement Association v. City of Chicago, 553 F.Supp. 1154, 1158 (N.D.Ill.1982). As Plaintiff points out, the legislative history of the Hyde Amendment shows "that Congress has always assumed that a participating State would not be required [by Title XIX] to fund medically necessary abortions once federal funding was withdrawn pursuant to the Hyde Amendment." Harris v. McRae, 448 U.S. at 310, 100 S.Ct. at 2684 (footnote omitted). See Zbaraz v. Quern, 596 F.2d at 200; Preterm, Inc. v. Dukakis, 591 F.2d 121, 128-131 (1st Cir.), cert. denied, 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979), appeal dismissed, 448 U.S. 901, 100 S.Ct. 3039, 65 L.Ed.2d 1131 (1980). We agree with Plaintiff that the legislative history can be read as suggesting that Congress did not intend to impose *156 on the states the entire burden of complying with federal court orders like those involved in the present case. Nevertheless, asserting that Congress did not intend to require a state to fund abortions for the costs of which federal reimbursement is not available is very different from asserting that Congress did not intend to prohibit such reimbursement when a state is required by a federal court to fund abortions which do not fall within the ambit of any of the explicit exceptions contained in the Hyde Amendment. Our impression is that, in the process of enacting the Hyde Amendment, Congress never considered the problem with which we are now faced. In short, we do not believe that the legislative history of the Hyde Amendment (or of Title XIX) evinces a sufficiently clear contrary congressional intent to overcome the plain meaning of the Hyde Amendment.
Our conclusion that Plaintiff is not entitled to the federal reimbursement which it seeks finds some support in the Supreme Court's opinion in Williams v. Zbaraz itself, in which the Court stated that the plaintiffs "could have been awarded all the relief they sought entirely on the basis of the District Court's ruling with regard to the Illinois statute," noting that "Title XIX does not prohibit `[a] participating State ... [from] includ[ing] in its Medicaid plan those medically necessary abortions for which federal reimbursement is unavailable [under the Hyde Amendment].'" 448 U.S. at 367 & n. 9, 100 S.Ct. at 2700 & n. 9. In addition, the one other court of which we are aware which has actually considered these issues reached essentially the same result that we now reach, albeit with little discussion. Women's Health Services, Inc. v. Maher, 514 F.Supp. 265, 275-276 (D.Conn.1981).

Conclusion
For the reasons stated above, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.
NOTES
[1] Margaret M. Heckler succeeded Richard S. Schweiker as Secretary of Health and Human Services on March 9, 1983, several months after the complaint in this case was filed. The change in the person occupying the office of Secretary has no material effect on this lawsuit. See Fed.R.Civ.P. Rule 25(d)(1). Under Rule 25(d)(1), Ms. Heckler is automatically substituted for Mr. Schweiker as a defendant in this case.
[2] In the discussion which follows, the term "Hyde Amendment" is used generically to refer to all of the versions of the Hyde Amendment.
[3] The Department of Health, Education and Welfare was subsequently divided into the Department of Health and Human Services and the Department of Education.
[4] Also on May 15, 1978, Judge Kirkland allowed two doctors to intervene as defendants. Zbaraz v. Quern, No. 77 C 4522, slip op. at 3-4 (N.D.Ill. May 15, 1978).