169 N.J. Super. 543 (1979)
405 A.2d 427
RIGHT TO CHOOSE; E.M., P.B., A.C., D.T., E.R. ON BEHALF OF E., A MINOR, AND D.C. ON BEHALF OF K, A MINOR, ALL ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; EDWARD S. MILNER, JR., M.D.; NEW JERSEY WELFARE RIGHTS ORGANIZATION; AND NEW JERSEY RELIGIOUS COALITION FOR ABORTION RIGHTS, PLAINTIFFS,
v.
BRENDAN T. BYRNE, GOVERNOR, STATE OF NEW JERSEY; JOHN J. DEGNAN, ATTORNEY GENERAL, STATE OF NEW JERSEY; ANN KLEIN, COMMISSIONER, DEPARTMENT OF HUMAN SERVICES, STATE OF NEW JERSEY; G. THOMAS RITI, DIRECTOR, DIVISION OF HUMAN SERVICES, STATE OF NEW JERSEY; THOMAS M. RUSSO, ACTING DIRECTOR, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, DEPARTMENT OF HUMAN SERVICES, STATE OF NEW JERSEY; AND JOANNE E. FINLEY, COMMISSIONER, DEPARTMENT OF HEALTH, STATE OF NEW JERSEY, DEFENDANTS, AND JOHN T. SCULLY, M.D., F.A.C.S., AS GUARDIAN ON BEHALF OF THOSE CONCEIVED BUT UNBORN HEREIN AND ON BEHALF OF OTHERS SIMILARLY SITUATED; DOMINIC A. INTROCASO, M.D., F.A.C.O.G.; ANTHONY P. DESPIRITO, M.D., F.A.A.P.; THE NEW JERSEY RIGHT TO LIFE COMMITTEE; THE STUDENT AD HOC COMMITTEE AGAINST THE WAR IN VIETNAM AND NEW JERSEY CONCERNED TAXPAYERS, AN ASSOCIATION, INTERVENORS.
Superior Court of New Jersey, Chancery Division.
Decided July 2, 1979.
*545 Ms. Nadine Taub, Ms. Joan Vermuelen, Mr. Edward Tetelman and Mr. Louis Raveson for plaintiffs.
Mr. Michael R. Cole, Assistant Attorney General and Ms. Andrea M. Silkowitz, Deputy Attorney General for defendants. (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
Mr. Stephen J. Foley for intervenors.
FURMAN, J.S.C.
Plaintiffs challenge on statutory and constitutional grounds the guidelines for Medicaid funding for abortions which were promulgated by the State Department *546 of Human Services to be effective on July 1, 1979. The proposed guidelines adhere to the Hyde Amendment standards enacted by the Federal Congress (P.L. 95-480, 92 Stat. 1586, approved October 18, 1978):
* * * [N]one of the funds provided for in this [paragraph] shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest has been reported promptly to a law enforcement agency or public health service; or except in those instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians.
The judgment in this litigation, in accordance with the court's published opinion, 165 N.J. Super. 443 (Ch. Div. 1979), provided: "That defendants * * * shall formulate written guidelines as to what abortions will be a covered service under the State of New Jersey's medicaid plan * * *."
By amended judgment the time for promulgation of new guidelines was extended to July 1, 1979. Meanwhile, guidelines which were promulgated pursuant to a preliminary injunction on July 7, 1978 have remained in effect, providing for State Medicaid funding for abortions "where the medical indications as to the necessity of an abortion for a particular woman are not insignificant and relate to the physical and/or psychological condition of the woman in question, and are not based solely on considerations of family planning, or emotional or social convenience."
The challenge to the proposed guidelines raises issues which were framed in this litigation. It is brought to effectuate a remedy, that is, to fix the terms of a supplemental final judgment. The Attorney General has consented to jurisdiction in this court, waiving any objection that review of a state administrative regulation should be in the Appellate Division (R. 2:2-3(a) (2)).
Plaintiffs advance two arguments, both mooted but not decided in the published opinion at 165 N.J. Super. 451, 458, *547 pending promulgation of new guidelines for State Medicaid funding for abortions.
The first argument is statutory, that is, that the Hyde Amendment controls Federal appropriations only and is not an implied repealer of the general provisions of the Medicaid Act, 42 U.S.C.A. § 1396 et seq., which require a participating State to provide Medicaid funding for "necessary medical services," including abortions.
Plaintiffs urge, in the alternative, the constitutional invalidity of the Hyde Amendment standards. Their challenge is not to the Hyde Amendment itself[1] but to the state guidelines incorporating the Hyde Amendment standards, as a violation of equal protection of the law under both the Federal and State Constitutions.
Preliminarily, it is found that a substantial proportion of medically necessary abortions fall between the Hyde Amendment standards and the standards defined in the preliminary injunction in this litigation. The danger to the pregnant woman in such cases is short of "severe and long-lasting physical health damage" but greater than "insignificant" if the child is carried to term. Examples include all those with psychological health disorders and many, particularly in the initial stages of pregnancy, whose diagnosis is heart disease, diabetes, kidney disease, chronic lung disease, sickle cell anemia, drug addiction, excessive nausea with dehydration hypertension thrombophlebitis, skin cancer, gastrointestinal ulcers or ulcerative colitis. Conditions which endanger life or severe and long-lasting physical health damage in the second and third trimesters of pregnancy may not be diagnosable as such in the first trimester, when an abortion itself is less dangerous to the pregnant woman.
The statutory issue raised by plaintiffs is resolved against them in view of the holdings by two United States Courts of Appeals, the Seventh Circuit unanimously and the *548 First Circuit by 2-1, that the Hyde Amendment, although contained in an appropriations act, impliedly repeals the general provisions of the Medicaid Act and substantively limits a state's obligation to provide its share of Medicaid funding for abortions to the Hyde Amendment standards. Preterm v. Dukakis, 591 F. 2d 121 (1 Cir.1979), cert. den. ___ U.S. ___, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979); Zbaraz v. Quern, 596 F.2d 196 (7 Cir., 1979).
Both Zbaraz and Preterm remanded the issue of the constitutionality of the Hyde Amendment to the respective United States District Courts. Subsequently, in the Northern District of Illinois Judge Grady ruled in Zbaraz, 469 F. Supp. 1212 (1979), that the Hyde Amendment and the Illinois statute incorporating it were unconstitutional as applied to medically necessary abortions prior to the point of fetal viability, that is, approximately the third trimester. His reasoning was that "most health problems associated with pregnancy" would not be covered by the Hyde Amendment standard and that "a pregnant woman's interest in her health so outweighs any possible state interest in the life of a nonviable fetus, that, for a woman medically in need of an abortion, the State's interest is not legitimate."
In the earlier opinion in this litigation this court, having determined the invalidity of N.J.S.A. 30:4D-6.1 on statutory grounds, stated as dictum:
After Medicaid funding for medically necessary abortions for the protection of pregnant women's health was made available, its withholding should not be discriminatory, barring funding for abortions but not for other medically necessary treatments and procedures, except on the basis of a compelling State interest under Federal constitutional law. [165 N.J. Super. at 457, 458]
The class discriminated against was identified as Medicaid-eligible women whose doctors recommended an abortion as medically necessary and were barred from Medicaid funding, *549 although all Medicaid eligible persons with a medical necessity for any other treatment or procedure were granted funding.
Plaintiffs also urge poverty and sex discrimination. Dropping down a tier in the two-tier test in equal protection of the law challenges, plaintiffs contend that legislation which inflicts unnecessary harm on a class of persons must be struck down as invalid even though it otherwise advances a legitimate purpose, relying on the concurring opinion of Justice Stevens in Carey v. Population Services, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed. 2d 675 (1977).
Defendants contend that a rational nexus, not a compelling State interest, should be the test of constitutionality and that the guidelines under challenge promote two permissible legislative purposes: protecting the life of the fetus and serving the financial interest of the State by assuring Federal matching funds for abortions.
The latter contention fails factually. Medicaid funding for childbirths without complications is $236, but for abortions without complications only $79. The State's 100% contribution to Medicaid funding for abortions which are medically necessary would be significantly less than the State's 50% contribution, matched by a federal contribution, for childbirths without complications. Complications may be anticipated in the final stages of pregnancy when the fetus is not aborted despite a physician's diagnosis that an abortion is medically necessary. The consequences of the proposed guidelines would be to add to, not to reduce, the total cost of the Medicaid program, hardly a reasonable or compelling State interest in constitutional terms[2]
*550 Legislation may be held invalid for violation of equal protection of the law if it does not reasonably advance a legitimate legislative purpose or if it discriminates against a "suspect class" or deprives a class other than "suspect" of a fundamental right without a compelling State interest to justify it. San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), is controlling that the State has an important legitimate interest in protecting the potentiality of human life and that indigent women seeking elective nontherapeutic abortions are not a "suspect" class and had no prior right to public funding for such abortions.
In this State Medicaid funding for abortions which were medically necessary but not involving danger to life was available from the decision in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972), reh. den. 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1972), reh. den. 410 U.S. 959, 93 S.Ct. 1410, 35 L.Ed.2d 694 (1973), until the lifting of the injunction in Doe v. Klein, No. 76-74, in the United States District Court for New Jersey in August 1977.
Entitlement to public assistance benefits is a right, not a privilege; such benefits may not be terminated without an evidentiary hearing. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
In Memorial Hospital v. Maricopa Cty., supra, the United States Supreme Court held that
* * * medical care is as much a "basic necessity of life" to an indigent as welfare assistance. And, governmental privileges or benefits necessary to basic sustenance have often been viewed as being of greater constitutional significance than less essential forms of governmental entitlements. [415 U.S. at 259, 94 S.Ct. at 1082-83]
*551 Viewing as a class Medicaid eligible women with a medical necessity for an abortion, the class is not "suspect" because of poverty. Maher v. Roe, supra at 432 U.S. 470, 471, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977); San Antonio School Dist. v. Rodriguez, supra at 411 U.S. 29, 93 S.Ct. 1278, 36 L.Ed. 2d 16 (1973); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).
The argument that the class is "suspect" because of sex must also be rejected. Discriminatory legislative treatment of Medicaid funding for abortions is directed against that medical procedure for terminating a pregnancy, not against women as a sex. Geduldig v. Aiello, 417 U.S. 484, 496, n. 5, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974).
In order to prevail in their challenge to the proposed guidelines, plaintiffs must establish an infringement of a fundamental right and the lack of a compelling state interest to justify the infringement of the fundamental right.
That fundamental right is established in the view of this court. Enjoyment of one's health is a fundamental liberty which is shielded by the Fourteenth Amendment to the Federal Constitution and by Article 1, paragraph 1 of the State Constitution against unreasonable and discriminatory restriction. Medicaid funding is in furtherance of that fundamental liberty.
The effect of the proposed guidelines would be to withhold public funding for one medically necessary procedure and one only, an abortion to protect a woman's health, although such funding was previously available. In contrast, all Medicaid-eligible persons with a medical necessity for any other treatment or procedure have the benefits of Medicaid available to them.
The proposed guidelines would discriminatorily infringe upon a fundamental right, the right to public benefits for the protection of one's health which have been provided heretofore in general legislation, and may be sustained as valid only on the basis of a compelling state interest justifying the withholding of Medicaid funding for medically necessary *552 abortions but for no other medically necessary treatment or procedure.
Wade is conclusive that protection of the potentiality of human life and encouragement of normal childbirth is not a compelling state interest when the health of the pregnant woman is threatened. The United States Supreme Court identified three interests: the pregnant woman's right of privacy in the abortion decision, the health of the woman and the protection of the potentiality of human life. The latter interest becomes "compelling," according to Wade, only at the point of viability of the fetus, and would at that point justify criminal proscription of abortion "except when it is necessary to preserve the life or health of the mother." 410 U.S. at 163, 164, 93 S.Ct. at 732. By necessary inference, the State's interest in protecting the fetus is not "compelling" until viability, and even then the health of the woman is the predominant interest, at least as a bar to criminal sanctions.
"Health" in Wade is not limited to the Hyde Amendment standard of severe and long-lasting impairment, as are the proposed guidelines. Rather, according to its normal meaning, preservation of health should be construed to extend to protection against all significant threats to health. Bolton, supra at 410 U.S. 192, 93 S.Ct. 739, 35 L.Ed.2d 201.
This court holds that the proposed guidelines in withholding Medicaid funding for medically necessary abortions, although such funding was previously available, are unconstitutionally discriminatory against Medicaid eligible women with a medical necessity for an abortion without warrant of a compelling state interest, in violation of equal protection of the law. Revised guidelines, which may incorporate the standards in the preliminary injunction barring Medicaid funding for elective nontherapeutic abortions and for abortions to prevent insignificant impairments to health, are ordered to be submitted within 60 days.
NOTES
[1] The Federal Government is not a party. 28 U.S.C.A. § 2403.
[2] State's financial interest is not viewed as a compelling State interest in an equal protection challenge. Memorial Hospital v. Maricopa County, 415 U.S. 250, 263, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).